UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-11203-RGS

PAUL DUBOIS, et al.

v.

NELSON V. ALVES, et al.

MEMORANDUM AND ORDER

April 24, 2023

For the reasons set forth below, plaintiff's motion for leave to proceed *in forma pauperis* is granted, plaintiff is assessed an initial, partial filing fee pursuant to 28 U.S.C. § 1915(b)(1)(B), plaintiff's motion for court's assistance to obtain party addresses is denied, and the amended complaint is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A.  The Clerk shall send the standard Notice to Prison form to the Treasurer's Office at MCI Norfolk.

BACKGROUND

On July 22, 2022, Paul DuBois, currently in custody at MCI Norfolk, filed a *pro se* civil rights complaint seeking relief under 42 U.S.C. § 1983.  *See* Dkt. No. 1.  By Memorandum and Order dated August 22, 2022, the court denied several motions and plaintiff was ordered to resolve the filing fee and file an amended complaint that sets forth a plausible claim upon which relief

may be granted.  Dkt. No. 7.   DuBois subsequently filed with the United States Court of Appeals for the First Circuit an interlocutory appeal which was dismissed on December 22, 2022.  Dkt. No. 14.  This court granted DuBois until April 1, 2023 to comply with the directives of the court's earlier orders.  Dkt. No. 19.

Now before the court are DuBois' motion for leave to proceed *in forma pauperis*, affidavit, prison account statement, amended complaint,  and motion for court's assistance to obtain party addresses.  Dkt. Nos. 20-24.

As noted by the First Circuit in the December 22, 2022 Judgment, Dkt. No. 14, DuBois was convicted of murder for the fatal shooting of a social worker in 1996 and has challenged his imprisonment based on allegations that he was unlawfully extradited from Missouri.  The 97-page amended complaint is brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1738.  Dkt. No. 23.  The amended complaint names 36 defendants[1] and is accompanied

---

[1] The amended complaint names the following 36 defendants: (1) Nelson v. Alves, (2) the Commonwealth of Massachusetts, (3) Claudia Dubois, (4) Michael O'Keefe, (5) James Cummings, (6) Thomas Cummings, (7) John Kotfila, (8) Robert Knott, Jr., (9) James Plath, (10) Brian Glenny, (11) J. Drew Segedelli, (12) Stephen Paul Maidman, (13) Scott Nickerson, (14) Scott Colgan, (15) Denise Simonini, (16) Deborah Patterson, (17) Karen R. Depalma, (18) Neil W. Heiger, (19) Catherine Becker Good; (20) Neil S. Cohen; (21) Lawrence P. Cohen; (22) Kathleen Higgins, (23) Mary Rose, (24) Lori Meads, (25)  Leslie J. Silva, (26) Terence Malone, (27) Seamen's Bank, (28)  Salem Five Mortgage Co., (29) Salem Five Savings Bank, (30) Citizens Bank, (31) 6 Amber Way, N. Truro, Massachusetts, (32) 1460 Massasoit Rd,

by almost 200 pages of exhibits. *Id.* DuBois alleges that all of the named defendants conspired and acted in concert to violate his civil rights. Plaintiff implicates almost everyone involved in his criminal prosecution, including prosecutors, defense counsel, and witnesses. Specifically, DuBois states that beginning on January 14, 2003, and continuing through the present, the Commonwealth "conspired with members of the bar and with private citizens and with entities and with government agencies and with government associations to effectuate an unjust arrest, prosecution and imprisonment of the plaintiff." *Id.* at 1 (introduction). DuBois further states that "in its' quest, [the Commonwealth] did violate the plaintiff's inherent and vested constitutional and civil rights to due process of law, equal protections, full faith and credit, and property ownership relative to his arrest, detainments, prosecution and imprisonment in a scheme designed to default the plaintiff, his children, his family and the public." *Id.* at p. 2. For relief, DuBois seeks "damages along with equitable relief in the return of his real property, among other things, and seeks a trial by jury on all issues claimed." *Id.*

---

N. Eastham, Massachusetts, (33) 4925 State Hwy, N. Eastham, Massachusetts, (34) 4955 State Hwy., N. Eastham, Massachusetts, (35) Massachusetts State Police Association, and (36) Barnstable County, Massachusetts. *See* Dkt. No. 23.

On June 5, 2003, DuBois was arrested in Missouri "without a felony fugitive warrant." *Id.* at ¶ 8.  DuBois alleges that several months earlier, on September 25, 2002, Claudia Dubois "turned a defaced gun over to" the Massachusetts State Police." *Id.* at ¶ 3.  A few months later, on January 14, 2003,  a search warrant application was filed in state court to "receive" a gun from Claudia Dubois, despite the fact that the gun  had already "been in possession and control" since September 25, 2002. *Id.*  ¶ 4. DuBois contends that on October 1, 2004, "a Nolle Prosequi [was entered onto plaintiff's] Superior Ct Docket Report for the Commonwealth's gun charge that never had existed in validity at either the lower district court or Superior Ct states." *Id.* at ¶ 44.

Less than two weeks after the search warrant application was filed, on January 24, 2003, attorney Karen Depalma received a municipal lien against 6 Amber Way in North Truro which plaintiff contends was used to provide equitable "security" for the state's subsequent acquisition of 4925 State Highway as well as the "takeover of 1460 Massasoit Rd [from the state's trial witnesses]." *Id.* at ¶ 5.  DuBois contends that the owner of 6 Amber Way became the "State's private citizen stand-in (straw) owner of County (public) record." *Id.*

DuBois alleges that on June 2, 2003, 1460 Massasoit Rd went into default at the Boston Land Court." *Id.* at ¶ 6.   In 2002, Claudia Dubois and Ursula Panzarella secured a mortgage from Citizens Bank for the purchase of 4925 State Highway.   *Id.* DuBois alleges that the mortgage was retroactively assigned to the Mortgage Electronic Registration System in an effort "to conceal a Citizens Bank of Massachusetts action that could provide a connection to the plaintiff's joint equity line account with Claudia DuBois (defendant) on 4955 State Hwy (A. 5), for which [plaintiff] will be arrested and booked at James Cummings' Barnstable County Jail facility."   *Id.* DuBois avers that on April 19, 2005, a $200,000 mortgage issued by Salem Five Mortgage Co on 4925 State Hwy to Leslie J. Silva is made subordinate to the prior July 08, 2004 Seamans bank $20,000 mortgage issued to both Leslie J. Silva and her counterpart Leslie J. Meads as dual grantors each." *Id.* at ¶ 46.

DuBois claims that although the property at 1460 Massasoit Road was recorded as closed on June 10, 2003, *id.* at ¶ 11, a docket report obtained by plaintiff in 2005 omitted "evidence that the case had been docketed 'closed' on June 10, 2003." *Id.*  On June 13, 2003, 4925 State Highway was conveyed "as a $200,000. private party quitclaim deed transfer [from Claudia DuBois and Ursula Panzarell to Leslie Meads] along with a Municipal Lien applied

for by Karen R. Depalma." *Id.* at ¶ 12.   DuBois contends that such forfeiture would require "the pre-recordance [p]ayment and collection of excise." *Id.* at ¶ 12(a).   DuBois alleges that on June 16, 2003, the Commonwealth, through Karen Depalma, "transferred 4925 State Hwy's equity via a Massachusetts Charter Salem Five Mortgage Co. mortgage to its' straw ..." *Id.* at ¶ 13.   DuBois contends that the "transferred equity" and subsequently recorded deed violated "the plaintiff's rights to full faith and credit." *Id.* at ¶ 13(a).  On June 28, 2005, a mortgage issued on 1460 Massasoit Road from Lower Cape Cod Community Development.  *Id.* ¶ 49.  DuBois avers that in 2010 and 2012, property taxes for 4955 State Hwy is "paid by check by the plaintiff and Claudia Dubois (C/O Terence Malone)."  *Id.* at ¶ 74.   DuBois alleges that in 2016 his "seized joint equity line account with Citizens Bank f Massachusetts [foreclosed] being used to pay his half share of Town property taxes <u>ran dry</u> – forcing the State to cede cover of its' ownership status [t]hrough Terence Malone [straw private citizen] on County Land court Record via a fraudulent recordance of a Town of Eastham, MA tax seizure deed to [s]how a public record town 'taking' of 4955 State Hwy in order to cease tax collecting against same as State's [o]nly [r]emedy to cease collection of taxes in the plaintiff's name." *Id.* at ¶ 76.

On June 2, 2003, the same day as the mortgage default, DuBois alleges that law enforcement sought, without warrant, plaintiff's "cell phone tower site records." *Id.* at ¶ 6(a).   DuBois contends that the cell phone records were sought for a "2003 grand jury investigation to which there is no record." *Id.* DuBois claims that law enforcement used "the Superior Court to commit fraud and illegally obtain the plaintiff's cell phone site records in order to locate him for warrantless arrest." *Id.*

DuBois asserts that on the following day, June 3, 2003, Massachusetts law enforcement contacted the Missouri Sheriff's Department seeking assistance in locating the plaintiff. *Id.* ¶ 7(a).  DuBois complains that before his arrest, the Committee for Public Counsel Services assigned a defense attorney "for the plaintiff's intended June 20, 2003 warrantless arrest process' . . . ." *Id.* ¶ 14.  DuBois alleges that on June 19, 2003, he was transported from Missouri to Massachusetts. *Id.* at ¶ 15.  On June 20, 2003, DuBois was brought before the Barnstable District Court for his arraignment. *Id.* at ¶ 16.   DuBois contends that he was not "booked" under the district court "docket case #0326CR001197" but under "Superior Ct's Crim/Civ Combined cases Docket Number BACR2003-00087 as a consolidation docket with the lower Courts' [transferred] Criminal case that will be referenced by the State under #0372CR00087." *Id.* at ¶ 17(a).

7

DuBois asserts that on January 31, 2006, an assistant district attorney filed an affidavit stating that no potentially exculpatory evidence was not turned over to plaintiff's defense counsel. *Id.* at ¶ 51. The following month, on February 1, 2006, Dubois' defense counsel "allegedly filed an Affidavit (for the State) giving his reason [why] he had not called a certain witness." *Id.* at ¶ 52.

The Amended Complaint is divided into 7 "claims for relief." As best can be gleaned from the allegations, the seven claims are as follows: Claim I (65- 68) concerns conspiracy to defraud plaintiff and take possession of plaintiff's estate located 4955 State Hwy in North Eastham; Claim II (68 -71) concerns conspiracy to unlawfully extradite plaintiff from Missouri to Massachusetts for the secret purpose of seizing plaintiff's North Eastham estate; Claim III (71- 76) concerns the foreclosure of plaintiff's property and the use of victim assistance and reward monies for transfer of property ownership; Claim IV (76 – 77) concerns an alleged conspiracy among the prosecutor and defense counsel as evidenced by an affidavit signed by these parties and presented to plaintiff as if to appear as if the affidavit was filed in court; Claim V (78 – 81) concerns plaintiff's inability to pay the balance due on his equity line of credit due to his detention in 2003 and trial in 2004 and plaintiff's subsequent default and foreclosure;  Claim VI (82 – 84) concerns

the state court record and plaintiff's allegations of insufficient documentation; and Claim VII (84-89) concerns alleged harm to plaintiff based on documents in the state court record that are not validated by judicial authority and plaintiff  having been assigned defense counsel he deems to be an adversary disguised as counsel.

MOTION FOR LEAVE TO PROCEED <em>IN FORMA PAUPERIS</em>

Because Dubois is a prisoner-plaintiff, his motion for leave to proceed *in forma pauperis* must be accompanied by "a certified copy of the trust fund account statement. . . for the 6-month period immediately preceding the filing of the complaint . . . obtained from the appropriate official of each prison at which the prisoner is or was confined" so that the court may determine the initial partial filing fee and subsequent monthly payments required for the filing fee as required under the Prison Litigation Reform Act. 28 U.S.C. § 1915(a)(2), (b).   For Dubois, the relevant 6-month period is February 2022 to July 2022.  The prison account statement filed by Dubois covers the period from August 1, 2022 through February 22, 2023, *see* Dkt. No. 22, so includes no information for the six month period preceding the filing of this action.  Accordingly, the court calculates Dubois' filing fee obligation based upon the information provided for the six-month period following the filing of the complaint (August 2022 through January 2023).

Upon review of Dubois' prison account statement, and based upon the average monthly deposits for the six month period beginning August 1, 2022 and continuing through January 31, 2023, Dubois is assessed an initial, partial filing fee of $36.12 pursuant to 28 U.S.C. § 1915(b)(1)(B). The remainder of the fee, $313.88, is to be assessed and collected in accordance with 28 U.S.C. § 1915(b)(2). The Clerk shall send the standard Notice to Prison form to the Treasurer's Office at MCI Norfolk. If Dubois seeks modification of the assessment of this filing fee, he may file a motion demonstrating good cause for any requested modification.

## DISCUSSION

In an effort to cure the pleading deficiencies of the original 2-page complaint, DuBois filed a 97-page Amended Complaint asserting claims under the following two statues: 28 U.S.C. § 1738 and 42 U.S.C. § 1983. Even liberally construing the Amended Complaint because DuBois is proceeding *pro se*, *Haines v Kerner*, 404 U.S. 519, 520 (1972), the court is compelled to dismiss for failure to state a claim upon which relief may be granted. Because most of the allegations concern actions and inactions surrounding DuBois' extradition and prosecution, his claims are barred by the favorable termination rule of *Heck v. Humphrey*. Additionally, the allegations of conspiracy are too conclusory to state a claim upon which relief may be

granted and, in any event, are barred by the applicable statute of limitations. Finally, many defendants are immune from suit or not state actors subject to liability under Section 1983.

28 U.S.C. § 1738 is one of two statutes under which plaintiff moves to seek his desired relief. Section 1738 generally requires "federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980). However, Section 1738 does not provide a private right of action. *See Griffith v. Paran LLP*, No. 21-01314, 2021 WL 4123805, at *2 (E.D. Cal. Sept. 9, 2021), report and recommendation vacated, No. 21-01314, 2021 WL 4442881 (E.D. Cal. Sept. 28, 2021) (citing *People of State of California ex rel. McColgan v. Bruce*, 129 F.2d 421, 424 (9th Cir. 1942)) ("Neither the Full Faith and Credit Clause of the U.S. Constitution nor the corresponding statute, 28 U.S.C. § 1738, is an independent basis for federal court jurisdiction, and neither provides a private right of action."). Where a state court has provided fair procedures for determining constitutional claims, the state court's determination has preclusive effect and bars relitigation of the same issue by the same party in federal court. *See Allen*, 449 U.S. at 96.

The doctrines of *res judicata*, or claim preclusion, and of collateral estoppel, or issue preclusion, apply in civil rights actions brought pursuant to section 1983. *See Johnson v. Mahoney*, 424 F.3d 83, 93 (1st Cir. 2005) (issue preclusion); *Spencer v. Dookhan*, No. 1:16-cv-12076, 2017 WL 2785423, at *4 (D. Mass. Jun. 27, 2017) (claim preclusion). Under both doctrines, the court is required to "give to state-court judgments the same preclusive effect as would be given by the courts of the state from which the judgments emerged." *Johnson*, 424 F.3d at 93.

Moreover, DuBois' claims are barred because, if proven, they would necessarily invalidate his conviction. DuBois fails to state a claim upon which relief may be granted because he is in essence challenging an intact sentence and conviction. "[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment . . . a [civil rights] plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In a civil rights case, this so-called "favorable termination" rule applies not only where the plaintiff expressly claims that his conviction or sentence is invalid, but wherever "a judgment in favor of the plaintiff would

12

necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. Because a judgment in favor of DuBois would imply the invalidity of his conviction or sentence, where that conviction still stands, his claims are barred.[2] *See Commonwealth v. DuBois*, 451 Mass. 20 (2008) (affirming first-degree murder conviction and affirming denial of motion for new trial).

Notwithstanding, Dubois' factual allegations are too conclusory and are not sufficient to state a conspiracy claim under 42 U.S.C. § 1983. Many of the actions that he attributes to the various defendants are routine occurrences in legal and real estate proceedings. The Amended Complaint is devoid of specific factual allegations which would support an inference that any of the defendants conspired together to violate DuBois' constitutional rights.

Also, DuBois' Section 1983 claims are untimely. For purposes of limitations related to Section 1983 claims, federal courts borrow the most closely analogous state statute of limitations, which in Massachusetts is three

---

[2] The Supreme Court has made clear that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement ... even though such a claim may come within the literal terms of § 1983." *Heck*, 512 U.S. at 481 (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973); *see also Davis v. Schifone*, 185 F. Supp. 2d 95, 100 (D. Mass. 2002) ("Under *Heck*, the principle barring collateral attacks ... is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." (internal quotation marks and citations omitted) (alteration in original)).

years.  *See Owens v. Okure*, 488 U.S. 235, 249-50 (1989) (holding that Section 1983 actions are governed by the residual or general personal injury statute of limitations in states with more than one statute of limitations); G.L. ch. 260, § 2A ("Except as otherwise provided, actions of tort . . . shall be commenced only within three years next after the cause of action accrues."). According to DuBois' allegations, he was extradited in 2003 and convicted in 2004.  DuBois alleges that a relinquishment of land was signed in 2012, *see* Am. Compl. ¶ 75, and that certain property taxes were paid in 2016 through the use of his former joint equity line account with Citizens Bank.  *Id.* at ¶ 76. As this action was not filed until July 22, 2022, these claims are untimely.

Finally, DuBois' claims against the Commonwealth and its agencies are subject to dismissal because they have immunity under the Eleventh Amendment which is an absolute bar to the imposition of liability upon the state and its state officers and agencies.  Prosecutors are entitled to absolute immunity from damages for initiating a prosecution and in presenting the state's case.  See *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Goldstein v. Galvin*, 719 F.3d 16, 24 (1st Cir. 2013) ("The protection afforded by an absolute immunity endures even if the official acted maliciously and corruptly in exercising his judicial or prosecutorial functions.") (internal quotation marks omitted).  Private parties who are not shown to have acted

under state law cannot be held liable under Section 1983 including defense attorneys, whether court-appointed or privately retained.  See *Polk Cty. v. Dodson*, 454 U.S. 312, 318 (1981) ("a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983.").  Finally, witnesses who testify in state court proceedings are immune from Section 1983 liability. *See Briscoe v. LaHue*, 460 U.S. 325 (1983) (holding that all trial witnesses are immune from Section 1983 liability arising from their testimony).  Also, being a participant in litigation or cooperating with a state attorney during a legal proceeding does not make a private party a co-conspirator or joint actor with the state. See *Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009); *Dennis v. Sparks*, 449 U.S. 24, 28 (1980).

ORDER

Accordingly, for the reasons stated herein:

1.    DuBois' motion (Dkt. No. 20) for leave to proceed *in forma pauperis* is ALLOWED.  Pursuant to 28 U.S.C. § 1915(b)(1), an initial partial filing fee of $36.12 is assessed.  The remaining $313.88 shall be collected in accordance with 28 U.S.C. § 1915(b)(2).  The Clerk shall send the standard Notice to Prison form to the Treasurer's Office at MCI Norfolk.

2.      DuBois' motion (Dkt. No. 24) for the court's assistance to obtain

party addresses is DENIED.

3.      The Amended Complaint is dismissed pursuant to 28 U.S.C. §§

1915(e)(2), 1915A.  The Clerk shall enter a separate order of dismissal.

SO ORDERED.

/s/ RICHARD G. STEARNS
UNITED STATES DISTRICT JUDGE